IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY F. MITCHELL,** | : | **CIVIL NO. 1:CV-08-01414** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **SCOTT DODRILL, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Troy F. Mitchell ("Mitchell") initiated this *Bivens*[1]-type action on

July 29, 2008 with a complaint filed pursuant to the provisions of 28 U.S.C. §

1331 (Doc. 1), as amended on February 5, 2009 (Doc. 22). Mitchell makes several

complaints about various conditions of Special Management Unit ("SMU") of the

United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"), his

former place of confinement. Mitchell names as Defendants several employees of

the Bureau of Prisons ("BOP") employed at USP-Lewisburg.[2] As relief he seeks

---

[1] *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials." *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Plaintiff names the following individuals as defendants in the amended complaint, as set forth by Defendants: Scott Dodrill, Northeast Regional Director; B.A. Bledsoe, Warden; Troy Williamson, former Warden; Chuck Maiorana, Associate Warden; Frank Strada, Associate Warden; Grank Passaniti, Captain; Dean Hollenbach, Unit Manager; P. Carrasquillo; Doug Contri, psychologist; Steve Brown, Hospital Administrator. (Doc. 22 at 1-2; Doc. 37 at 1.)

compensatory and punitive damages.[3]

Before the court is a motion to dismiss or, in the alternative, for summary judgment, filed on behalf of Defendants.  (Doc. 35.)  For the reasons set forth below, the motion for summary judgment will be granted.

## I.    **Background**

In support of their motion for summary judgment, Defendants submitted a statement of material facts.  (Doc. 38.)  Because Mitchell has failed to file an opposing statement of material facts as required by Middle District Local Rule 56.1, the following facts submitted by Defendants are deemed admitted.

The SMU at USP-Lewisburg began accepting inmates in September 2002. (Doc. 38 ¶ 23.)  From September 2002 to the spring of 2009, the SMU was confined to one housing unit and housed approximately eighty (80) inmates.  (*Id*. ¶ 24.)  Placement in the SMU is not punitive.  (*Id*. ¶ 25.)  Rather, the SMU was implemented to provide additional programming opportunities to inmates who may have been involved in or played a leadership role in a disruptive incident

---

[3] In his amended complaint, Mitchell also seeks a transfer to another institution that is commensurate with his custody level.  (Doc. 22 at 19.)  As the record reflects that since filing the amended complaint Mitchell has been transferred to the United States Penitentiary at Big Sandy in Inez, Kentucky, (*see* Doc. 43) this claim for relief is now moot.  *See Johnson v. Dodrill, et al.*, Civ. No. 3:cv-03-2125, 2005 WL 2406053, at *4 (M.D. Pa. Sept. 29, 2005) (deeming moot the plaintiffs' request for transfer out of the SMU as they are no longer housed at USP-Lewisburg).

involving some type of gang activity (racial, geographic or otherwise).  (*Id*. ¶ 26.)

Other inmates who have a significant disciplinary history and who chronically

have not been able to function in general population also may be assigned to the

SMU.  (*Id*. ¶ 27.)  The SMU provides inmates with a number of self study,

individual, and group activities geared toward the development of behavior and

values that will allow for them to function successfully in the general population

of some BOP institution.  (*Id*. ¶ 28.)  The SMU program encompasses a multi-

phase approach designed to teach inmates self-discipline, pro-social values, and to

facilitate the participant's ability to successfully co-exist with members of other

geographical, cultural, and religious backgrounds.  (*Id*. ¶ 29.)  The program

ordinarily is completed in 18-24 months.  (*Id*.)

　　　In the fall of 2008, the BOP announced plans to change USP-Lewisburg's

mission from an ordinary penitentiary to become a "more controlled, restrictive

institution that will house inmates who have been difficult to manage in other

institutions."  (*Id*. ¶ 30.)  As a result, the SMU concept will be maintained

institution-wide instead of in only one housing unit.  (*Id*. ¶ 31.)  Currently, the

SMU is operating in several housing units, and construction is underway on the

rest of the institution to enable the change in mission.  (*Id*. ¶¶ 32-33.)  In addition,

many of the general population inmates assigned to USP-Lewisburg are in the

process of being transferred to other BOP institutions to free up space for incoming "SMU program inmates." (*Id*. ¶ 34.) Finally, as part of the SMU program expansion, the BOP issued Program Statement 5217.01, "Special Management Units," which became effective on November 19, 2008. (Doc. 37-2.)

On October 22, 2007, Mitchell was transferred from the United States Penitentiary in Atwater, California to USP-Lewisburg to participate in the SMU program.[4] (Doc. 37-2 at 3, Ex. 1, L. Cunningham Decl.) Mitchell has been designated by the BOP as a Central Inmate Monitoring case ("CIMs"), an inmate who requires special supervision or separation from other inmates.[5] (*Id*. at 5.)

In his amended complaint, Mitchell alleges that when he arrived as USP-Lewisburg he attempted to refuse participation in the SMU program because he was given an SMU inmate handbook rather than a BOP Program Statement. (Doc. 22 at 8-10.) He asserts that a BOP Program Statement would have provided inmates with the protocols to guide them through the various phases of the program. (*Id*.) Mitchell also alleges that the conditions of the SMU are inhumane,

---

[4] Mitchell was temporarily incarcerated at the United States Penitentiary in Herlong, California prior to his transfer to USP-Lewisburg. (Doc. 37-2 at 3.)

[5] As set forth by Defendants, CIMs is a process through which the BOP monitors inmates who require special supervision or separation from other inmates for a variety of reasons, including gang affiliation. (Doc. 37-2 at 5; 28 C.F.R. § 524.70 et seq.) For security reasons, inmates are notified of their CIMs status, but not given specific information which may compromise the safety of other inmates or staff, or reveal intelligence gathering methods. (*Id*.)

ranging from rust erosion, poor plumbing, insect and pest infestation, and inadequate ventilation. (*Id*. at 10-13.)

Mitchell claims that conditions in the SMU worsened when Defendant Passaniti took over as Captain of the SMU in early 2008. (*Id*. at 13.) According to Mitchell, Defendant Passaniti ordered the confiscation of personal property of SMU inmates without advanced notice on March 10 and 18, 2008. (*Id*.) On March 20, 2008, Defendant Passaniti ordered a shakedown of the SMU to confiscate more personal property from the inmates. (*Id*. at 14.) During this shakedown, a physical struggle erupted between SMU inmates and corrections officers. (*Id*. at 14-15.) As the struggle escalated, "the block exploded into a state of chaos . . . [as] SMU inmates on the 2nd and 3rd ranges began flooding, yelling, breaking sprinklers, lights and banging on the doors and tearing up toilets and sinks." (*Id*. at 15.) Mitchell claims that when corrections officers arrived at his cell, they did not employ BOP confrontation avoidance procedures prior to entering the cell. (*Id*.) Rather, corrections officers opened the cell's door slot, gassed the cell with pepper spray, and shot a concussion grenade at Mitchell. (*Id*. at 15-16.) Mitchell avers that he was able to cover himself with a mattress to avoid a direct hit from the grenade, but it still blew the mattress out of his hands, burning hair off his arm and leg, and causing damage to his hearing. (*Id*. at 16.)

When corrections officers then entered the cell, they struck him in the nose and slammed him to the ground before dragging him out of the cell. (*Id*.) Once in the shower area of the SMU, a physician's assistant did not treat his injuries. (*Id*. at 16-17.)

Mitchell claims that he filed requests for administrative remedies with respect to the claims he raises in his amended complaint. The record submitted by Defendants reflects that Mitchell did file requests for administrative remedy from USP-Lewisburg on various topics and to various levels, including both the Northeast Regional and Central Offices.[6] Mitchell's attempts to exhaust the issues raised in the amended complaint are as follows.

On December 4, 2007, Mitchell filed administrative remedy number 474774-F1 at the institutional level (USP-Lewisburg), alleging that he should not have been placed in the SMU program. (Doc. 37-2 at 7.) This request was rejected on that same day for failure to seek informal resolution. (*Id*.) On December 11, 2007, Mitchell re-filed remedy 474774-F2, again alleging that his placement in the SMU was not warranted. (*Id*.) Mitchell's grievance was denied

---

[6] Defendants have submitted the declaration of L. Cunninghan, supervisory attorney at USP-Lewisburg, which verifies the accuracy of all the administrative remedies pursued by Mitchell, and the responses thereto, while he was incarcerated at USP-Lewisburg. (Doc. 37-2 at 3-5.) Also attached as exhibits are the relevant SENTRY computer-generated records of Mitchell's exhaustion attempts. (*Id*. at 6-22.)

on the institutional level on December 18, 2007. (*Id*.) He appealed this grievance to the Northeast Regional Office on December 26, 2007, which denied the appeal on January 25, 2008. (*Id*. at 8.) Finally, he filed an appeal with the Central Office on February 4, 2008 by remedy number 474774-A1. (*Id*. at 9.) The Central Office denied his appeal on March 19, 2008. (*Id*.)

On January 28, 2008, Mitchell filed administrative remedy number 480445-F1 at the institutional level, grieving his placement in the SMU and complaining about the SMU's conditions. (*Id*. at 8.) This grievance was rejected on the same day, January 28, 2008. (*Id*.) In that rejection, Mitchell was advised that his request pertained to two separate issues, and that he must file a separate grievance for each unrelated issue.[7] (*Id*.)

On February 4, 2008, Mitchell filed administrative remedy number 481362-F1 at the institutional level, alleging that he should not have been placed in the SMU, and that the SMU does not have a corresponding BOP Program Statement. (*Id*. at 9.) That request was denied on February 13, 2008. (*Id*.) On March 3, 2008, Mitchell appealed that denial to the Northeast Regional Office by remedy

_____

[7] Pursuant to the BOP administrative remedy program policy, "[t]he inmate shall place a single complaint or a reasonable number of clearly related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue." 28 C.F.R. § 542.14(c)(2).

number 481362-R1.  (*Id*. at 10.)  The Northeast Regional Office denied the appeal on April 1, 2008.  (*Id*.)  On April 14, 2008, Mitchell filed remedy number 481362-A1 with the Central Office.  (*Id*. at 11.)  The Central Office rejected Mitchell's appeal on April 17, 2008 on procedural grounds, (*Id*.), and Mitchell re-filed his appeal with the Central Office on May 2, 2008, by remedy number 481362-A2, (*Id*. at 12).  The Central Office denied his appeal on May 2, 2008.  (*Id*.)

On April 7, 2008, Mitchell filed administrative remedy number 488885-R1 with the Northeast Regional Office, complaining that USP-Lewisburg staff executed an improper cell extraction on March 20, 2008.  (*Id*. at 10.)  Mitchell claimed he was initially filing the grievance at the regional level because of the sensitivity of the claim.  (*Id*.)  The Northeast Regional Office rejected the grievance on April 8, 2008, stating that the claim could in fact first be addressed by the warden.  (*Id*.)  As a result, on April 28, 2008, Mitchell filed remedy 488885-F1 at the institutional level, asserting the same claims.  (*Id*. at 11.)  That grievance was denied on May 13, 2008.  (*Id*.)  Mitchell appealed the denial to the Northeast Regional Office on May 19, 2008 by remedy number 488885-R2.  (*Id*. at 14.)  That office denied Mitchell's grievance on June 17, 2008.  (*Id*.)  Mitchell filed an appeal with the Central Office on July 2, 2008 by remedy number 488885-A1.  (*Id*. at 18.)  The Central Office denied Mitchell's appeal on September 3,

2008.  (*Id*.)

On May 19, 2008, Mitchell filed administrative remedy number 493961-F1 at the institutional level, requesting to purchase a fan for the SMU from the commissary.  (*Id*. at 13.)  This request was denied on May 27, 2008.  (*Id*.) Mitchell filed appeal number 493961-R1 with the Northeast Regional Office on June 2, 2008.  (*Id*. at 16.)  The appeal was denied on July 2, 2008.  (*Id*.)  Mitchell appealed that denial to the Central Office on July 22, 2008, by remedy number 493961-A1, which was denied on September 9, 2008.  (*Id*. at 19.)

On May 22, 2008, Mitchell filed administrative remedy number 494407-F1 at the institutional level, requesting to "make up recreation" when he received less than seven hours per week.[8]  (*Id*. at 14.)  This request was rejected on the same day for failure to seek informal resolution.  (*Id*.)  Mitchell re-filed the request on May 28, 2008, and it was denied by the warden on June 19, 2008.  (*Id*. at 15.)  Mitchell filed appeal number 494407-R1 with the Northeast Regional Office on June 27, 2008.  (*Id*. at 18.)  The appeal was denied on July 22, 2008.  (*Id*.)  Mitchell appealed that denial to the Central Office on August 7, 2008 by remedy number 494407-A1.  (*Id*. at 21.)  The Central Office denied his appeal on October 6, 2008.

---

[8] Defendants cite this grievance in their brief in support of the instant motion.  However, an allegation with respect to recreation is not included in Mitchell's amended complaint. Therefore, the court will not address this issue.  *See infra* p. 19.

(*Id*.)

On May 28, 2008, Mitchell filed administrative remedy number 495024-F1 at the institutional level, requesting that the SMU commissary list be expanded. (*Id*. at 15.)  That request was denied on June 3, 2008.  (*Id*.)  Mitchell filed appeal number 495024-R1 with the Northeast Regional Office on June 10, 2008.  (*Id*. at 17.)  The appeal was denied on July 9, 2008.  (*Id*.)  Mitchell appealed that denial on August 7, 2008 to the Central Office by remedy number 495024-A1.  (*Id*. at 21.)  The Central Office denied his appeal on October 15, 2008.  (*Id*.)

On June 2, 2008, Mitchell filed administrative remedy number 495571-F1 at the institutional level, alleging that a counselor was not available to give him forms.[9]  (*Id*. at 16.)  That request was denied on June 12, 2008.  (*Id*.)  Mitchell filed appeal number 495571-R1 with the Northeast Regional Office on June 17, 2008.  (*Id*. at 17.)  The appeal was denied on July 15, 2008.  (*Id*.)  Mitchell appealed that denial on July 28, 2008, by remedy number 495571-A1, and received an informational response from the Central Office on October 14, 2008. (*Id*. at 20.)

On July 10, 2008, Mitchell filed administrative remedy number 500225-F1

---

[9] Defendants cite this grievance in their brief in support of the instant motion.  However, an allegation with respect to access to a counselor is not included in Mitchell's amended complaint.  Therefore, the court will not address this issue.  *See infra* p. 19.

at the institutional level, requesting a single cell in the SMU. (*Id*. at 19.) That request was denied on July 16, 2008. (*Id*.) Mitchell filed appeal number 500225-R1 with the Northeast Regional Office on July 28, 2008. (*Id*. at 20.) That appeal was denied on August 27, 2008. (*Id*.) Mitchell appealed that denial on September 18, 2008 to the Central Office by remedy number 500225-A1. (*Id*. at 22.) The Central Office denied his appeal on November 26, 2008. (*Id*.)

On July 29, 2008, Mitchell filed a complaint which was docketed at 1:08-cv-01414. (Doc. 1.) In that complaint, Mitchell alleged that prison officials subjected him to cruel and unusual punishment while he was housed in the SMU. (*Id*.) Specifically, he challenged his placement in the SMU and the conditions in the SMU. (*Id*.) Further, he claimed that he sustained a serious injury to his hearing when prison officials needlessly shot him with a concussion grenade during a riot in the SMU in March of 2008. (*Id*.) By order dated September 3, 2008, the court directed service of the complaint upon the Defendants named therein. (Doc. 9.)

On January 7, 2009, Mitchell filed another complaint which was docketed at *Mitchell v. Warden Bledsoe, et al.*, 1:09-cv-00020 (Doc. 1). In that complaint, Mitchell set forth the same allegations relating to his time spent in the SMU. As a result, by memorandum and order dated January 23, 2009, the court directed the

Clerk of Court to consolidate *Mitchell v. Warden Bledsoe, et al.*, civil no. 1:09-cv-00020, into *Mitchell v. Scott Dodrill, et al.*, civil no. 1:08-cv-01414, pursuant to Fed. R. Civ. P. 42(a). (Doc. 21.) The court further directed the Clerk of Court to close *Mitchell v. Warden Bledsoe, et al.*, civil no. 1:09-cv-00020, and provided Mitchell with thirty (30) days to file an amended complaint. (*Id.*)

Mitchell filed his amended complaint on February 5, 2009. (Doc. 22.) Defendants filed the instant motion to dismiss or, in the alternative, for summary judgment, on June 26, 2009. (Doc. 35.) Responsive and reply filings followed, and the motion is now ripe for disposition.

## II.    Standards of Review

### A.    Motion to Dismiss

Defendants have filed a motion which, in part, also seeks dismissal of the complaint on the grounds that Mitchell's complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion, however, goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary documents outside the pleadings contravening Mitchell's claims. Rule 12(d) provides as follows:

If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the

> pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The court will not exclude the evidentiary materials accompanying Defendants' motion to dismiss because Mitchell has also been given a reasonable opportunity to present material relevant to the motion. Thus, Defendants' motion to dismiss or, in the alternative, for summary judgment, shall be treated solely as seeking summary judgment.

## B. <u>Summary Judgment</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id*. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260

F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   Discussion

In their motion for summary judgment, Defendants assert that Mitchell failed to exhaust his administrative remedies with respect to all but two of his claims, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).  Further, Defendants argue that Mitchell's exhausted claims fail on the merits.  The court will address these arguments in turn.

### A.   Exhaustion of Administrative Remedies

Defendants seek an entry of judgment in their favor because Mitchell failed to exhaust his administrative remedies with respect to his claims relating to the March 20, 2008 incident in the SMU and to the claims relating to the conditions of the SMU.  The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of

relief that may be gained through the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 93 (quoting *Nussle*, 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218,

227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. *Id*. at 232. A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *Gallego v. United States*, No. 02-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. *Id*. Therefore, it must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of

the BOP. *Id*. at §§ 542.15(a) and 542.18. No administrative appeal is considered

finally exhausted until a decision is reached on the merits by the BOP's Central

Office. *Id*. at § 542.15.

Defendants claim that Mitchell did not file a single request for

administrative remedy concerning his claims that on March 20, 2008, Defendants

(1) failed to employ confrontation avoidance efforts with him, (2) violated his

constitutional rights by using chemical agents and non-lethal weapons upon him;

and (3) deprived him of his personal property. (Doc. 37 at 13.) Defendants also

claim that prior to filing the initial complaint, Mitchell failed to exhaust his

administrative remedies concerning the following claims relating to the conditions

of the SMU: (1) the March 20, 2008 cell extraction (remedy number 488885-A1);

(2) the purchase of a fan from the commissary (remedy number 493961-A1); (3)

the availability of a counselor for handing over a form (remedy number 495571-

A1); (4) the expansion of the SMU commissary list (remedy number 495024-A1);

(5) the make-up of recreation time (remedy number 494407-A1); and (5) single-

cell placement (remedy number 500225-A1). (*Id*.)

Initially, the court makes several observations with respect to Defendants'

argument on Mitchell's attempts to exhaust his administrative remedies for the

claims set forth in his amended complaint. First, the court notes that remedy

number 48885-A1, characterized by Defendants as "cell extraction," directly addresses the procedures used to remove Mitchell from his cell on March 20, 2008. Thus, the court rejects Defendants' argument that Mitchell did not file any request whatsoever relating to that extraction. Second, liberally construing Mitchell's amended complaint, the court finds that contrary to Defendants' assertion in the instant motion, it does not appear that Mitchell has set forth a claim with respect to the loss of his personal property on March 20, 2008. Additionally, the record of filed requests for administrative remedies reflects that no such grievance was filed by Mitchell, on any administrative level, at any time prior to the filing of the amended complaint. As such, any claim for loss of personal property as a result of the March 20, 2008 incident will not be addressed here. Third, again liberally construing the amended complaint, the court finds that contrary to Defendants' assertions in the instant motion, it does not appear that Mitchell has set forth claims relating to the availability of a counselor and the make-up of recreation time. While the record of Mitchell's exhaustion attempts does indicate that Mitchell filed grievances related to these complaints, those claims have not been raised in the amended complaint. Therefore, the court will not address these issues.

In deciding whether Mitchell has exhausted his administrative remedies

relating to the claims set forth in his amended complaint, the court notes that most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court. *See Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003) (holding that, "the district court must look to the time of filing, not the time the district court is rendering the decision, to determine if exhaustion occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory."); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (district court must dismiss a case without prejudice "when there is no presuit exhaustion," even when there is exhaustion while the suit is pending); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002) (holding that belated exhaustion will not save a complaint from dismissal); *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (affirming dismissal of inmate's complaint because he failed to exhaust his administrative remedies on each of his claims, although some were exhausted during pendency of his litigation); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001) (affirming dismissal of inmates' complaint because they had begun, but not yet exhausted, the prison grievance procedure); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (dismissing inmate's complaint because he filed his federal complaint before allowing the administrative process

to be completed); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 538 (7th Cir.

1999) (remanding for dismissal and reversing the district court's refusal to dismiss

when, at the time the district court was ruling on the motion to dismiss, the inmate

had fully exhausted his administrative remedies but had not done so at the time of

filing).

The United States Court of Appeals for the Third Circuit has not issued a

precedential opinion on the issue. However, in a non-precedential opinion, the

Court found that the lower court had properly dismissed the plaintiff's complaint

because his exhaustion attempt took place after he filed his *Bivens* claim. *Oriakhi*

*v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (not precedential). "[T]he

district court must look to the time of filing, not the time the district court is

rendering its decision, to determine if exhaustion has occurred." *Id*. (quoting

*Johnson*, 340 F.3d at 627-28). The Court further stated that "[t]he fact that [the

plaintiff] completed the administrative review process before the District Court

reached the exhaustion question is of no consequence. Indeed, there appears to be

unanimous circuit court consensus that a prisoner may not fulfill the PLRA's

exhaustion requirement by exhausting administrative remedies after the filing of

the complaint in federal court." *Oriakhi*, 165 F. App'x at 993 (citing *Johnson*, 340

F.3d at 627-28). (not precedential).

Here, the underlying case was initiated on July 29, 2008 with the filing of Mitchell's complaint. (Doc. 1.) Prior to the filing of an answer by Defendants, on January 7, 2009, Mitchell filed a separate complaint, docketed at *Mitchell v. Warden Bledsoe, et al.*, civ. no. 1:09-cv-00020. As stated above, by memorandum and order dated January 23, 2009, the court directed that the underlying case be consolidated with civil case number 1:09-cv-00020, and afforded Mitchell the opportunity to file one all-inclusive amended complaint. (Doc. 21.) Notably, based on the record submitted on summary judgment in the underlying case, it appears that Mitchell had exhausted his administrative remedies by the time he initiated that later action. Because the court consolidated the two actions and directed Mitchell to file one all-inclusive amended complaint, the court shall look to the time of filing of that amended complaint to determine whether exhaustion has occurred. As the record reflects that Mitchell exhausted his administrative remedies related to his claims prior to filing the amended complaint in this case, the motion for summary judgment will be denied on the grounds of failure to exhaust administrative remedies.

**B.     Exhausted Claims**

Defendants concede that Mitchell has exhausted his administrative remedies with respect to his claim concerning the general living conditions of the SMU, his

placement in the SMU, the lack of a BOP Program statement for the SMU. (Doc. 37 at 15-19.) Thus, the court will address the merits of these claims.[10]

## 1.   Conditions in the SMU

Mitchell claims that the living conditions of the SMU, including the ventilation, plumbing, insect and pest infestation, and general conditions of the cells; the restricted access to the commissary; and double-celling inmates in cells designed for a single inmate, subject him to cruel and unusual punishment under the Eighth Amendment. Further, Mitchell avers that he filed grievances about these conditions, but the grievances were denied.

The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort.

---

[10] To the extent that Mitchell seeks injunctive relief with respect to these claims, due to his transfer to another institution, Mitchell now lacks standing to seek such relief as he is no longer subject to the alleged conditions he attempts to challenge. *See Pressley v. Beard*, No. 3:cv-04-2535, 2006 WL 354647, at *3 (M.D. Pa. Feb. 15, 2006) (citing *Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981) (prisoner's transfer from the prison moots claims for injunctive and declaratory relief with respect to prison conditions, but not claims for damages)). Thus injunctive relief with respect to these claims will be denied.

23

Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989) (citing *Rhodes*, 452 U.S. at 346). Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. *Rhodes*, 452 U.S. at 348.

To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). This includes showing that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-63. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> *Some* conditions of confinement may establish an Eighth Amendment

violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (citations omitted). *See also Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990) (elaborating on factors to be considered, including "food, medical care, sanitation, control of vermin, lighting, heating, ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and security and staffing") (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1025-26 & n.7 (3d Cir. 1988)).

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. As described by the Supreme Court in *Farmer*, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 837. The Court added that "it is

enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id*. at 842.

Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (quoting *Rhodes*, 452 U.S. at 349 n.14)). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security. *Id*. at 322.

In the present case, for the reasons that follow, the court concludes that there exists no genuine issue of material fact that the deprivations alleged by Mitchell constitute cruel and unusual punishment. Accordingly, the Eighth Amendment claims will be denied.

### a.   General Conditions of SMU

In his amended complaint, Mitchell makes several allegations about the condition of his SMU cell. He alleges that his cell is in poor condition, with poor

welding and rust erosion present at the base of the walls. (Doc. 22 at 10.) He also complains that the inadequate plumbing has resulted in his cell smelling of sewage. (*Id*. at 11.) He further complains that his cell is infested with "cockroaches, spiders, worms, nats, mice and other unknown insects." (*Id*.) He also complains that his cell lacks ventilation, causing the cell's temperature to rise to 100-105 degrees. (*Id*. at 11-12.) There is nothing in the record in this case to support Mitchell's claims.

Despite his statements about the conditions of the SMU, Mitchell has neither alleged nor produced evidence that any of the conditions in his cell jeopardized, or potentially jeopardized, his health, or caused the cell to be unfit for habitation. To the extent that Mitchell alleges discomfort in the cell, he does not meet the requirements for a claim of cruel and unusual punishment. *See Hill v. Smith*, Civ. No. 4:05-cv-1724, 2005 WL 2666597, at *7 (M.D. Pa. Oct. 19, 2005) (finding presence of mice and cockroaches in USP-Lewisburg cells does not present health hazard to satisfy Eighth Amendment claim). Further, although "inmates have a right to be free from extreme hot and cold temperature," *Peterkin v. Jeffes*, 661 F. Supp. 895, 904 (E.D. Pa. 1987), *aff'd in part and vacated in part*, 855 F.2d at 1021 (3d Cir. 1988), and to a minimal level of cleanliness within their cells, *cf. Peterkin*, 855 F.2d at 1027, "the Constitution does not mandate

27

comfortable prisons." *Rhodes*, 452 U.S. at 349. Without any evidence of actual

harm to Mitchell caused by these general conditions of the SMU, he cannot

demonstrate the existence of a serious constitutional deprivation redressable under

*Farmer*.

Moreover, for that matter, on summary judgment Mitchell has not provided

any evidence to support his allegations that the Defendants disregarded the

substantial risk of serious harm to Mitchell by failing to take reasonable measures

to abate it or acted with deliberate indifference to Mitchell's health or safety. *See*

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001) (confirming to survive

summary judgment in a prison conditions case, a plaintiff "must come forward

with evidence from which it can be inferred that the defendant-officials were at the

time suit was filed, and are at the time of summary judgment, knowingly and

unreasonably disregarding an objectively intolerable risk of harm.") (quoting

*Farmer*, 511 U.S. at 846). In sum, absent any evidence that the alleged conditions

of the SMU cell caused harm to Mitchell, and that Defendants were deliberately

indifferent to that harm, the court must grant summary judgment in favor of

Defendants with respect to this claim.

### b.     Commissary restrictions

Mitchell alleges in his amended complaint that as an SMU inmate he is not

given the same commissary privileges as a general population inmate. (Doc. 22 at 12.) Specifically, he claims that he was unable to purchase a fan from the general population commissary. (*Id*.) He also claims that when Defendant Passaniti assumed management of the SMU in early 2008, coffee and potato chips were removed from the commissary list. (*Id*. at 13.) He avers, however, that coffee was eventually placed back on the list. (*Id*.) These allegations do not rise to the level of a sufficiently serious constitutional deprivation under *Farmer*, 511 U.S. at 834. Further, they do not rise to the deprivation of "minimal civilized measure of life's necessities," *Griffin*, 112 F.3d at 709, required to constitute cruel and unusual punishment under the principles set forth above. *See Pabaon Osvaldo v. U.S.P. Lewisburg Warden*, Civ. No. 3:cv-05-155, 2006 WL 485574, at *8 (M.D. Pa. Feb. 28, 2006) (dismissing Eighth Amendment allegation of limited access to commissary in the SMU based on failure to show deprivation of "minimal civilized measure of life's necessities").

### c.   Double-celling

Mitchell complains that Defendants have subjected him to cruel and unusual punishment by double-celling him in a cell designed for a single inmate. It is well-settled that double celling inmates is not *per se* unconstitutional. *Rhodes*, 452 U.S. at 348. *See also Harrison v. Bledsoe*, Civ. No. 1:09-cv-01600, 2010 WL

29

186804, at * 6 (M.D. Pa. Jan. 13, 2010) (finding no Eighth Amendment claim where the plaintiff alleges he is double-celled for twenty-three hours a day in SMU and that such double-celling leads to tension and stress); *Henry v. Wilson*, Civ. No. 2:05-cv-648, 2007 WL 2746717, at *5 (W.D. Pa. Sept. 17, 2007) (denying Eighth Amendment claim where the plaintiff fails to produce any evidence that his conditions in a double cell deprived him of any basic human need). Double celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." *Id*.

Here, Mitchell alleges that he has been forced to live in a cell that is too small for two inmates. However, he does not allege that he was singled out for the double-celling or that his health or life is or was endangered by the condition. Further, he has not shown that he suffered a substantial injury from another inmate or facts from which it can be reasonably inferred that he is in imminent danger of

substantial injury as a result of being double celled. Since the court has already

determined that the other conditions complained of do not deprive Mitchell of "the

minimal civilized measure of life's necessities," *Griffin v. Vaughn*, 112 F.3d at

709, nor indicate that prison officials "knew of and disregarded an excessive risk

to [Mitchell's] health or safety," *Farmer*, 511 U.S. at 837, Mitchell's

disappointment here with the double-celling practice in the SMU does not amount

to cruel and unusual punishment. Thus, the court will grant summary judgment in

favor of Defendants with respect to this claim.

### d.      Denial of Grievances

Mitchell claims that Defendants violated his constitutional rights by failing

to grant his grievances related to the conditions of the SMU. It is well-established

that inmates do not have a constitutionally protected right to a prison grievance

system. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119,

137-38 (1977). *See also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal

grievance regulations providing administrative remedy procedure do not create

liberty interest in access to that procedure). Thus, Mitchell's claim that

Defendants violated his constitutional rights by denying his grievances fails to

state a claim and summary judgment will be granted in favor of Defendants here.

In sum, Mitchell's allegations regarding the conditions of the SMU, even

when examining the totality of the circumstances, do not raise a plausible

inference that he was denied "the minimal civilized measure of life's necessities"

or that the Defendants acted with deliberate indifference to his health or safety.

Accordingly, Defendants are entitled to summary judgment on Mitchell's Eighth

Amendment claims concerning the conditions of the SMU.

### 2. Placement in the SMU

Mitchell also alleges that he has been made to suffer atypical and significant

hardship without due process when he was placed in the SMU after being

wrongfully labeled as a gang member or associate and despite committing no rule

infractions.  (Doc. 22 at 9-10.)  Further, in his opposition to the instant motion,

Mitchell complains that he did not receive a hearing prior to his placement in the

SMU.  (Doc. 46 at 3.)  In their motion for summary judgment, Defendants counter

that Mitchell's placement in the SMU does not implicate his due process rights.

The court agrees with Defendants.

As stated by the Supreme Court, "the Constitution itself does not give rise to

a liberty interest in avoiding transfer to more adverse conditions of confinement.

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S.

215, 225 (1976)).  However, a due process liberty interest "in avoiding particular

conditions of confinement may arise from state policies or regulations." *Id.* at

222. The Due Process Clause protects a prisoner's right to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 222-23 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Stated otherwise, a liberty interest arises from the Due Process Clause only where the conditions or degree of confinement to which the inmate is subjected are beyond the sentence imposed upon him or otherwise violate the Constitution.  *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

In the instant case, Mitchell has produced no evidence demonstrating that he has been subjected to confinement that exceeded the sentence imposed upon him or otherwise violated the Constitution.  The conditions Mitchell alleges in his amended complaint are entirely consistent with the conditions in the SMU.  Furthermore, he has produced no evidence or even argued that his transfer to the SMU somehow resulted in a loss of good conduct time credits or otherwise altered his sentence.  These conclusions are consistent with prior holdings of this court that placement in the SMU does not give rise to atypical and significant hardships, and that it does not implicate due process of law.  *See Smith v. Dodrill, et al.*, Civ.

No. 4:07-cv-2295, 2009 WL 62175, at *4, 11-12 (M.D. Pa. Jan. 8, 2009); *Spencer v. Kelchner, et al.*, Civ. No. 3:06-cv-1099, 2007 WL 88084, at * 10 (M.D. Pa. Jan. 9, 2007); *Francis v. Dodrill, et al.*, Civ. No. 3:04-cv-1694, 2005 WL 2216582, at * 3-5 (M.D. Pa. Sept. 12, 2005); *Stotts v. Dodrill, et al.*, Civ. No. 3:04-cv-00043, slip op. at 8 (M.D. Pa. Feb. 7, 2005).  Thus, Defendants are entitled to summary judgment on this claim.

### 3. <u>Lack of BOP Program Statement for SMU</u>

Mitchell claims that the BOP's SMU placement policy caused him atypical and significant hardship, presumably by depriving him of his general population status.  He further claims that the SMU is impermissibly operating without a BOP Program Statement, *i.e.*, any approved standard or criteria for placing inmates in the program.[11]  Thus, Mitchell claims that his due process rights have been violated.

Inmates do not possess a liberty interest under the Due Process Clause to be classified in a facility of their choosing.  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement

---

[11] The BOP's Program Statement on SMUs became effective on November 19, 2008, thus post-dating the allegations in the amended complaint.  (Doc. 37-2.)

ordinarily contemplated by a prison sentence."); *Sheehan v. Beyer*, 51 F.3d 1170, 1175 (3d Cir. 1995). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. § 3621. However, as stated above, inmates do have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. This is not such a transfer. The conditions set forth by Mitchell and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country, and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Furthermore, the undisputed facts establish that placement in the SMU program is not punitive in nature, but rather is designed to provide additional programming opportunities for inmates involved in a disruptive incident. (Doc. 38 ¶¶ 25-29.) As found by this court, "[u]sing restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law." *Francis*, 2005 WL 2216582, at * 5. Here, Defendants have shown that Mitchell was placed in the SMU because of his disciplinary history and gang affiliation, specifically past leadership in group demonstrations. (Doc. 37-2 at 5.) In opposition to the instant motion, Mitchell provides no evidence to refute this classification. Moreover, while Mitchell clearly prefers not

to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause. *See Mackey v. Strada*, Civ. No. 3:cv-06-0156, 2008 WL 4210468, at *5-6 (M.D. Pa. Sept. 9, 2008) (finding inmate's challenge to his transfer to the SMU program despite having committed no disciplinary violation does not implicate due process); *McKettrick v. Williamson*, Civ. No. 4:cv-06-0543, 2006 WL 1307929, at *3-9 (M.D. Pa. Mar. 22, 2006) (denying inmate's challenge to the lack of a BOP SMU policy without approved BOP standard or criteria as not implicating a liberty interest). Therefore, the court finds no genuine issue of material fact that Mitchell has no liberty interest in avoiding placement in the SMU, and summary judgment will be granted in favor of Defendants.

### 4.    March 20, 2008 Cell Extraction

In his amended complaint, Mitchell claims that on March 20, 2008, Defendants failed to employ confrontation efforts with him and used chemical agents and non-lethal weapons upon him while extracting him from his SMU cell, in violation of his constitutional rights. As set forth above, Mitchell has exhausted his administrative remedies with respect to this claim. *See supra* p. 22.

In their brief in support of the instant motion, Defendants do not address the merits of Mitchell's claims relating to the cell extraction. However, a district court has the ability to *sua sponte* dismiss a prisoner case pursuant to the screening

provision of 28 U.S.C. § 1915A if it determines that the complaint "fails to state a claim upon which relief may be granted." In applying this statutory requirement here, a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6). Thus, the truth of Mitchell's allegations are assumed. From a review of the pleadings in this case, the court concludes that Mitchell may be entitled to relief on his claims relating to the use of force during the cell extraction on March 20, 2008. Thus, Defendants' motion with respect to this claim will be denied and the claim will be permitted to proceed. However, to the extent that Mitchell is seeking monetary damages from the individual Defendants in their official capacities, such a claim is barred under the Eleventh Amendment. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990). Mitchell's claims against Defendants for monetary damages in their official capacities will be dismissed. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). However, Mitchell may proceed on his claims relating to the cell extraction against the Defendants in their individual capacities.

## IV.    Conclusion

For the reasons set forth herein, the motion for summary judgment will be granted as to Mitchell's claims relating to the his placement in, and conditions of,

the SMU.  The motion for summary judgment will be denied as to Mitchell's

claims relating to the March 20, 2008 cell extraction.

   An appropriate order will issue.




          s/Sylvia H. Rambo    
          United States District Judge


Dated: March 5, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY F. MITCHELL,** | : | **CIVIL NO. 1:CV-08-01414** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **SCOTT DODRILL,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY**

**ORDERED THAT:**

1) The motion for summary judgment is **GRANTED** with respect to

Plaintiff's claims relating to the conditions of the SMU.

2) The motion for summary judgment is **GRANTED** with respect to

Plaintiff's claim relating to his placement in the SMU.

3) The motion for summary judgment is **GRANTED** with respect to

Plaintiff's claim relating to the lack of a BOP Program Statement for the SMU.

4) The motion for summary judgment is **DENIED** with respect to Plaintiff's

claims relating to the March 20, 2008 cell extraction.

5) Defendants are directed to file an answer to the amended complaint (Doc. 22) within thirty (30) days of the date of this order.


                                        s/Sylvia H. Rambo
                                        United States District Judge


Dated: March 5, 2010.