IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY F. MITCHELL,** | : | **CIVIL NO. 1:CV-08-01414** |
| **Plaintiff** | : | **(Judge Rambo)** |
| v. | : | |
| **SCOTT DODRILL,** *et al.*, | : | |
| **Defendants** | : | |

# **M E M O R A N D U M**

Plaintiff Troy F. Mitchell ("Mitchell"), an inmate currently incarcerated at the United States Penitentiary at Big Sandy in Inez, Kentucky, filed this *Bivens*[1]-type action on July 29, 2008, (Doc. 1), as amended on February 5, 2009, (Doc. 22), against several employees[2] from his former place of incarceration, the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). Following disposition of a previously-filed motion for summary judgment,[3] the remaining

---

[1] *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials." *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Plaintiff names the following individuals as Defendants: Scott Dodrill, Northeast Regional Director; B.A. Bledsoe, Warden; Troy Williamson, former Warden; Chuck Maiorana, Associate Warden; Frank Strada, Associate Warden; Passaniti, Captain; Dean Hollenbach, Unit Manager; P. Carrasquillo; Doug Contri, psychologist; Steve Brown, Hospital Administrator. (Doc. 22 at 1-2.)

[3] *See* Section I.B., Procedural History, *infra*, at pp. 6-7.

issue before the court is whether Defendants violated Mitchell's constitutional rights during a March 20, 2008 cell extraction. Before the court is Defendants' motion for summary judgment on that issue. (Doc. 61.) For the reasons set forth below, the motion for summary judgment will be granted.

I. **Background**

   A. **Facts**

In support of their motion for summary judgment, Defendants submitted a statement of material facts. (Doc. 63.) Because Mitchell has failed to file an opposing statement of material facts as required by Middle District Local Rule 56.1, the following facts submitted by Defendants are deemed admitted.

On March 20, 2008, a use of force team at USP-Lewisburg was employed to perform a cell extraction of Mitchell.[4] (*Id.* ¶¶ 3-15.) Under Bureau of Prisons' ("BOP") Program Statement 5566.06, "Use of Force and Application of

---

[4] As referred to by Defendants in their statement of material facts, Defendants provided videotape footage of the March 20, 2008 cell extraction. (Doc. 63 at 2-3, n.1; Doc. 60, Sealed In Camera Video.) The video, redacted pursuant to court order dated October 6, 2010, and provided to Mitchell, (*see* Doc. 66), shows Defendant Captain Passaniti providing an overview of the incidents of the entire day and noting the number of cell extractions performed previously that day, (Doc. 63 at 2-3, n.1). Defendant Passaniti describes how some inmates voluntarily exited their cells and others refused to cooperate and submit to restraints and, thus, a use of force team was employed to enter the cells and remove those inmates. (*Id.*) He further describes how use of force teams were preparing to travel to the third floor of G-Block to manage several cells in which inmates had barricaded themselves, covered the windows, and were refusing to come out. (*Id.*) Defendant Passaniti states that those inmates would be given one order to voluntarily exit their cells before any force was used. (*Id.*)

Restraints," the purpose of the use of force and application of restraints, in relevant part, is as follows:

> 2. Program Objectives. The expected results of this program are:
>     a. Force will ordinarily be used only when attempts to gain voluntary cooperation from the inmate have not been successful.
>     b. When force is used, it will be only the amount of force required to subdue an inmate, or preserve or restore institution security and good order.
>     c. Confrontation avoidance techniques will be used when feasible to avoid calculated use of force situations.

(Doc. 63 ¶ 1.) Further, BOP policy also provides as follows:

> Prior to any calculated use of force, the ranking custodial official (ordinarily the Captain or shift Lieutenant), a designated mental health professional, and others shall confer and gather pertinent information about the inmate and the immediate situation. Based on their assessment of that information, they shall identify a staff member(s) to attempt to obtain the inmate's voluntary cooperation and, using the knowledge they have gained about the inmate and the incident, determine if use of force is necessary.

(*Id.* ¶ 2) (quoting 28 C.F.R. § 552.23).

At 6:51 p.m., the use of force team walked to Mitchell's cell 321 on the G-Block, where he had covered his window so that staff could not see inside. (Doc. 63 ¶ 3.) Covering a window is particularly dangerous because inmates may have weapons or other barricade items which may make a cell entry increasingly dangerous for staff and for the inmates. (*Id.* ¶ 4.) Use of force team member Bruce Densberger knocked on the cell window in order to get Mitchell's attention

3

and ordered him to "Come to the door and cuff up." (*Id.* ¶ 5.) He also stated, "Put your hands out," meaning that Mitchell should offer his hands through the food slot to submit to cuffs. (*Id.* ¶¶ 6, 7.) A single burst of chemical agent was then introduced into the cell through the food slot.[5] (*Id.* ¶ 8.) When Mitchell failed to comply, a second burst of chemical agent was introduced. (*Id.* ¶ 9.) Densberger then knocked on the cell door again and attempted to look through the covered window. (*Id.* ¶ 10.) When there was no response from Mitchell to voluntarily come to the cell door, a concussion grenade was introduced, and the use of force team entered the cell to begin securing Mitchell. (*Id.* ¶ 11.) Once secured, Mitchell was removed from the cell and placed against the wall. (*Id.* ¶ 12.) He was searched and his shoes were removed as a precaution against him possibly having weapons or contraband hidden in them. (*Id.* ¶ 13.) He was then walked down the hall, and a metal-detector was passed over him. (*Id.* ¶ 14.) He was

---

[5] Under BOP policy,

> The Warden may authorize the use chemical agents or non-lethal weapons only when the situation is such that the inmate:
> (a) Is armed and/or barricaded; or
> (b) Cannot be approached without danger to self or others; and
> (c) It is determined that a delay in bringing the situation under control would constitute a serious hazard to the inmate or others, or would result in a major disturbance or serious property damage.

(Doc. 63 at 3, n.2) (citing 28 C.F.R. § 552.25).

4

placed into a holding cell, where he was subsequently decontaminated and medically evaluated. (*Id.* ¶ 15.)

The Health Services staff member who performed the evaluation noted that Mitchell was decontaminated in cool water for fifteen minutes and that he complained that he may have a "broken nose." (*Id.* ¶ 16.) The staff member noted "minor swelling, no signs of trauma," and that Mitchell's nose was "solid and intact" with no bleeding. (*Id.* ¶ 17.) As a result, the staff member noted "No medical attention" was necessary. (*Id.* ¶ 18.) However, for the next several consecutive days Mitchell was seen by medical staff, per normal procedure for any inmate who has been exposed to chemical agents. (*Id.* ¶ 19.) On March 22, 2008, medical staff noted that Mitchell showed "no signs of discomfort, respiratory distress, and is complaint free." (*Id.* ¶ 20.)

As a result of the March 20, 2008 incident, Mitchell received a disciplinary incident report for "Engaging in Group Demonstration." (*Id.* ¶ 21.) Mitchell admitted that he committed the prohibited act for which he was charged, and was sanctioned by the Disciplinary Hearing Officer ("DHO") on May 14, 2008, to twenty-seven days loss of good-conduct time, thirty days of disciplinary segregation, and 120 days loss of commissary. (*Id.* ¶ 22.)

B. **Procedural History**

Mitchell filed his amended complaint on February 5, 2009. (Doc. 22.) In his amended complaint, Mitchell makes several allegations concerning various conditions of the Special Management Unit ("SMU") at USP-Lewisburg. By order dated April 20, 2009, the court directed service of the amended complaint. (Doc. 28.)

Following an enlargement of time, Defendants filed a motion to dismiss or, in the alternative, for summary judgment, on June 26, 2009. (Doc. 35.) A supporting brief followed on July 13, 2009. (Doc. 37.) Mitchell filed his opposing brief on December 29, 2009, (Doc. 46), and Defendants filed a reply on January 11, 2010, (Doc. 47).

By memorandum and order issued on March 5, 2010, the court granted in part and denied in part Defendants' motion for summary judgment. (Doc. 48.) Specifically, the court granted the motion in favor of Defendants with respect to the claims relating to the conditions of the SMU; placement in the SMU; and, lack of a BOP Program Statement for the SMU. (*Id.*) The court denied the motion with respect to the March 20, 2008 cell extraction, and directed Defendants to answer the amended complaint. (*Id.*) Defendants filed an answer on April 5, 2010. (Doc. 52.)

On May 7, 2010, the court issued an order directing the completion of discovery by July 9, 2010, and the filing of dispositive motions and supporting briefs by August 9, 2010. (Doc. 57.) Defendants filed the instant motion on August 9, 2010, along with a supporting brief, (Doc. 62), and statement of material facts, (Doc. 63). Responsive and reply briefing has been filed. (Docs. 67, 69.) Thus, the motion is ripe for disposition.

**II.     Standard of Review**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

7

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.  **<u>Discussion</u>**

In the instant motion, Defendants contend, *inter alia*, that summary judgment should be entered in their favor because they did not violate Mitchell's Eighth Amendment rights with respect to the March 20, 2008 cell extraction.[6]  The court agrees.

The Eighth Amendment, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  *Helling v. McKinney*, 509 U.S. 25, 32 (1993).  It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Id*. at 31.

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and

---

[6] Because the court finds that Mitchell's Eighth Amendment rights have not been violated in the context of the March 20, 2008 cell extraction, it need not address Defendants' additional arguments for the granting of summary judgment in their favor.

9

sadistically used to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321). The prisoner need not show significant injury to state an excessive use of force claim. *Hudson*, 503 U.S. at 8, 10. However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de mimimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (citations omitted).

Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Whitley*, 475 U.S. at 321 (quoting *Rhodes*, 452 U.S. at 349 n.14)). Prison officials "should be accorded wide-ranging

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security. *Id*. at 322.

Examining the circumstances of this case under the *Whitley* factors, the court concludes that a reasonable trier of fact would conclude that Mitchell has failed to set forth a claim of excessive force with respect to the March 20, 2008 cell extraction. Mitchell has not presented any evidence that would establish that there is an issue of material fact as to whether Defendants acted to "maliciously and sadistically cause harm" to him. *Hudson*, 503 U.S. at 7. Instead, the evidence establishes that Defendants used the proper amount of force necessary to preserve internal order and discipline in the housing unit which Mitchell himself characterizes as having "exploded into a state of chaos." (Doc. 22 at 15.) Further, the video of the cell extraction provided to the court and to Mitchell shows that Mitchell was a participant in the disturbance, as he had covered his window to prevent staff from seeing inside and did not respond to staff's confrontation avoidance efforts. (Doc. 60, In Camera Video.) By Mitchell's own actions, prison

11

staff was required to employ a use of force team to secure him.  Thus, based on the video evidence and undisputed record, the court concludes that Defendants afforded Mitchell the opportunity to avoid the use of force, and upon his refusal to submit to hand restraints, used only that force which was necessary to restore order and safety to the housing unit and institution overall.  Because Mitchell has failed to set forth a Eighth Amendment claim with respect to the March 20, 2008 cell extraction, summary judgment will be granted in favor of Defendants.

**IV.** **Conclusion**

For the reasons set forth herein, the motion for summary judgment will be granted in favor of Defendants.  An appropriate order will issue.

    s/Sylvia H. Rambo
    United States District Judge

Dated:  January 13, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY F. MITCHELL,** | : | **CIVIL NO. 1:CV-08-01414** |
| **Plaintiff** | : | **(Judge Rambo)** |
| v. | : | |
| **SCOTT DODRILL,** *et al.*, | : | |
| **Defendants** | : | |

## **O R D E R**

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The motion for summary judgment (Doc. 61) is **GRANTED** in favor of Defendants.

2) The Clerk of Court is directed to **ENTER** judgment in favor of Defendants and against Plaintiff.

3) The Clerk of Court is directed to **CLOSE** this case.

                                                    s/Sylvia H. Rambo
                                                United States District Judge

Dated: January 13, 2011.